**BOARD OF COUNTY COM'RS OF WOODS COUNTY et al. v. STATE ex rel. COM'RS OF LAND OFFICE et al.**

No. 16587. Opinion Filed April 6, 1926.

Rehearing Denied, July 5, 1927.

(Syllabus.)

1. **Taxation—Unconstitutionality of Statute Making Mortgage Lien of State Prior to Tax Lien.**

Section 9748, Compiled Oklahoma Statutes, 1921, in effect and in application by judgment, extinguishes the state's lien for taxes upon real estate. Such effect is unconstitutional as being in contravention of article 10, section 5, of the Constitution of Oklahoma, which provides; "The power of taxation shall never be surrendered, suspended or contracted away. * * *"

2. **Same—Priority of Taxes as "Perpetual Lien."**

In this state the tax lien on real property cannot be made subordinate or stricken down by statutory enactment, or by judgment, to accommodate another lien. And especially is this so in view of section 9724, Compiled Oklahoma Statutes, 1921, which provides: "Taxes on real property are hereby made a perpetual lien."

3. **Same—Tax Lien not Divested by Judicial Process.**

A perpetual tax lien, having attached to land, is not divested by a sale of the land under judicial process, whether upon execution, decree of court, foreclosure of mortgage, or any other proceedings, in view of section 9724, Compiled Oklahoma Statutes, 1921, and article 10, section 5, of the Constitution.

4. **Same—Tax Sales and Mortgage Foreclosures by State—Notice to Purchaser of Surviving Lien.**

A purchaser at a real estate mortgage sale involving the common school fund is presumed to know that the state has another lien upon the real estate for taxes, in that the public record disclosed the same. Such mortgage sale is subject to an existing tax lien, and should the land be sold for taxes with an existing mortgage thereon to the state based upon loans of the common school fund, the purchaser at such sale would take the place of the mortgagor, but the state would not be barred or precluded from the enforcement of its mortgage lien against such real estate so mortgaged.

Error from District Court, Woods County; Arthur G. Sutton, Judge.

Action by the State of Oklahoma ex rel. Commissioners of the Land Office to foreclose a mortgage on real estate based upon a loan from the common school fund against Pearl Hook and Ada B. Hook, mortgagors, and other lien claimants, and the County Treasurer and Board of County Commissioners of Woods County, claiming lien for taxes accrued after date of the mortgage and prior to this foreclosure. Judgment for plaintiff, foreclosing the mortgage lien and declaring same to be a prior lien on the real estate to that of taxes, and the Board of Commissioners and County Treasurer appeal. Modified and affirmed.

C. E. Wilhite and L. Z. Lasley, for plaintiffs in error.

George E. Merritt, for defendants in error.

RILEY, J. The state of Oklahoma on the relation of the Commissioners of the Land Office began this action in the district court of Woods county to foreclose a mortgage on certain real estate situated in said county. The Commissioners of the Land Office made a loan of $4,500, in 1919, to Pearl Hook and his wife, who executed a mortgage on the real estate involved, to secure the payment of the loan. The mortgagors defaulted in payments due under the terms of the loan, and further failed to pay taxes assessed against the real estate, in the aggregate amount of $769.54, for the years 1920 to 1924, inclusive. The county treasurer and county commissioners, claiming a prior lien for taxes due, were made parties defendant.

The cause was tried in June, 1925, upon an agreed statement of facts, and upon the issues of law presented a judgment was rendered in favor of the Commissioners of the Land Office, holding that the mortgage lien was superior to the tax lien.

The only controversy presented is whether a mortgage lien on behalf of the state, based upon a loan of common school fund money, is superior to a tax lien of the state based upon delinquent taxes.

The defendants, the county treasurer and the county commissioners, in their appeal contend that the statute upon which the Commissioners of the Land Office base their right of priority is section 9748, Compiled Oklahoma Statutes, 1921, which is as follows:

"Whenever any lands shall be sold for delinquent taxes under the provisions of this article, upon which any mortgage or other lien exists in favor of the state of Oklahoma or the Commissioners of the Land Office or any other commission, board or officer having power to loan public funds, or any funds under the control of the state upon real estate security, such tax shall be secondary at all times to the lien of the state or of the Commissioners of the Land Office, or of such commission, board or officer."

The defendants contend that a literal application of the act quoted would be to make the state's mortgage lien superior to the tax lien and thereby permit all lands mortgaged to the state to be relieved of their proportionate burden of taxes, and thus the power of the state to levy and collect taxes would be seriously and materially impaired.

It is said that this effect given the act makes it violative of article 5, section 57, of the Constitution, because the said section, being a part of the General Revenue Act, thus is made to cover a subject not embraced in the title.

It is further contended that the effect given the act is violative of article 5, section 50, of the Constitution, which says:

"The Legislature shall pass no law exempting any property within this state from taxation, except as otherwise provided in this Constitution."

Also, that it is violative of article 10, section 5, of the Constitution, which says:

"The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects."

Also, that it is violative of article 5, section 46, of the Constitution, in that its effect partakes of the nature of special and local legislation.

Likewise is the assertion that the application of the act is in violation of article 5, section 51, of the Constitution, which says:

"The Legislature shall pass no law granting to any association, corporation or individual any exclusive rights, privileges or immunities within this state."

And that it violates article 5, section 53, of the Constitution, which says:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities or obligations of any corporation, or individual, to this state, or any county, or other municipal corporation thereof."

Briefs have been filed on behalf of numerous county attorneys, who appear amici curiae, joining in support of the theory of plaintiffs in error.

Under a strict construction of the rules of procedure it might be held that the constitutionality of section 9748, supra, is not in this case, and the matter disposed of without passing upon the question of the superiority of the liens, for the reason that said section is applicable only where lands have been sold for delinquent taxes, and since the record does not show the lands to have been so sold, the condition precedent to the enforcement of the priority of the mortgage lien does not exist, and that the court erred in applying said section in the absence of the condition precedent to the right of the superiority of the mortgage lien.

However, the case was tried upon the theory of the superiority of the respective liens, and the judgment of the trial court was evidently based upon the theory that the state had power to make a mortgage lien in the name of the state, to secure the payments of moneys loaned from the common school funds, superior to the state's lien for taxes, and it is evident that the trial court based its judgment on said section 9748, supra, there being no other act of the Legislature or constitutional provision of this state dealing with the priority of the liens herein considered. We think it necessary to pass upon the question submitted, particularly in view of the public concern, and for the additional reason that the funds involved in the loan were a part of the common school fund held in trust by the state.

There is a distinction between right accruing to the state in handling revenues belonging to it and the rights of the state arising from control of the common school fund, held in trust by the state. The revenues belonging to the state in its sovereign capacity are a part of its property, and so long as the state keeps within constitutional limitations, it may deal with its property as it sees fit. On the other hand, the common school fund does not belong to the state, but the state merely holds such fund in trust under the conditions of the federal grant contained in the Enabling Act. The school funds were merely entrusted for the benefit of the common school, and the state pledged itself to hold such trust inviolate for the benefit of the schools.

By the Constitution, article 11, section 1, the state accepted "all grants of land and donations of money made by the United States under the provisions of the Enabling Act * * * for the uses and purposes and upon the conditions and under the limitations for which the same are granted or donated," and pledged the faith of the state to preserve such lands and moneys as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated.

Section 7 of the Enabling Act provided for two separate grants, one a grant of land in Oklahoma Territory, and the other a grant of $5.000,000 in lieu of corresponding land in Indian Territory. Both grants were made in trust and accompanied by inviolable conditions, which trust and conditions were accepted by the state. The state cannot violate these conditions nor dissipate such funds. To do so would constitute grounds for a termination of the trusteeship and a withdrawal of the funds by the federal government.

Article 11, section 6, Constitution of Oklahoma, provides:

"The permanent common school and other educational funds shall be invested in first mortgages upon good and improved farm lands within the state (and in no case shall more than fifty per centum of the reasonable valuation of the lands without improvements be loaned on any tract), Oklahoma state bonds. county bonds of the counties of Oklahoma. school district bonds of the school district of Oklahoma, United States bonds; preference to be given to the securities in the order named.

"The Legislature shall provide the manner of selecting the securities aforesaid, prescribe the rules, regulations, restrictions and conditions upon which the funds aforesaid shall be loaned or invested, and do all things necessary for the safety of the funds and permanency of the investment."

Section 9748, supra, was enacted in an effort on the part of the Legislature to carry out the provisions of article 11, section 6, of the Constitution.

Section 9748, supra, creates a priority of mortgage liens over tax liens under certain specified conditions. It places the power of the state in handling of the school funds on a parity with the powers of the state in the handling of its own funds. By the creation of the priority of the mortgage lien the statute in effect and in application extinguishes the state's lien for taxes. This effect is unconstitutional. It is in contravention of article 10, section 5, of the Constitution, which says:

"The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

The effect of the judgment in foreclosure of the mortgage lien is to wipe out the tax lien. The right of the sovereign to collect taxes is necessarily included in the power of taxation. We are here confronted with a constitutional inhibition and a constitutional obligation; the former restraining the surrendering or suspension of the collection of a tax. This applies to the courts as well as the Legislature; the latter imposing the obligation to protect inviolate a trust fund. Either the inhibition or the obligation carried too far and without due regard for the other renders an intolerable conflict. An act in contravention of the former would tend toward self-destruction of the sovereign, whose duty under the trusteeship, amongst other things, is to live to protect the object of the trust. An act in contravention of the latter is to violate a duty and the conditions of the trust agreement.

In this state the tax lien on real property cannot be made subordinate or stricken down by law, or by judgment, to accommodate another lien, especially so without the repeal of section 9724, Compiled Oklahoma Statutes, 1921, which provides:

"Taxes on real property are hereby made a perpetual lien."

And this is true, in view of the general rule, 37 Cyc. 1138, to the effect that "a tax lien levied and assessed upon specific property is not a lien on that or any other property of the owner unless expressly made so by statute, and an intention to this effect must be clearly manifested in the statute, as the lien will neither be created by implication nor enlarged by construction", for the Constitution conveys the power to tax and section 9724, quoted, expressly creates the lien and fixes its duration and the property to which it attaches. A perpetual tax lien, having attached to land, is not divested by a sale of the land under judicial process, whether upon execution, decree of court, foreclosure of a mortgage, or in any other proceeding, in view of section 9724, supra, and article 10, section 5, of the Constitution, supra.

In Bloxham v. Consumers' Electric Light & Street Railroad Co. (Fla.) 41 Am. St. Rep. 44, it is said:

"The state's lien for taxes. having attached by the assessment of the property, could not be divested by a subsequent judicial sale, even though the decree under which the sale

was made should have directed that the property should be sold free from all incumbrances. Mesker v. Koch, 76 Ind. 68."

The right to levy and collect taxes is an attribute of sovereignty—it cannot be suspended or surrendered under our Constitution, and that effect given the judgment, in view of the statute under consideration, in the instant case, in foreclosing the mortgage lien and ending in the words, "and it is further ordered and adjudged by the court that from and after the sale of said lands and tenements under and by virtue of this judgment and decree that said defendants, * * * the board of county commissioners of Woods county and L. T. Cox, county treasurer of said county, be and are forever barred and foreclosed of and from all liens upon right, title, interest, estate or equity in or to said lands, tenements or any part thereof," is in error as violative of the Constitution, article 10, section 5, and section 9724, Compiled Oklahoma Statutes, 1921.

The judgment may foreclose the mortgage lien and direct a sale of the lands and direct the payment of all the proceeds of the sale to the payment of the mortgage lien if necessarily all is required, but the tax lien cannot be swept aside and held for naught.

The purchaser at the mortgage sale should, and is presumed to know that the state has another lien upon the real estate for taxes, and that under the Constitution and statute, supra, the sale for the mortgage lien is expressly subject to the state's tax lien, and that he, the purchaser, merely steps into the mortgagee's shoes in so far as the state's liens for its trust funds and its taxes are concerned. As indicated, the reverse is true. Should the lands be sold for taxes without a foreclosure of the mortgage existing, the purchaser would take the place of the mortgagor, and the state would not be barred or precluded from asserting and maintaining an existing claim or right to or lien upon such real estate in favor of the state by virtue of its trust fund mortgage lien. In fact, by section 9749, Compiled Oklahoma Statutes, 1921, relative to tax deeds, it is provided that such deed "shall vest in the grantee an absolute estate in fee simple in such lands, **subject, however, to all claims which the state may have thereon for taxes or other liens or incumbrances."** For to hold otherwise, as stated in Fisher et al. v. Brower et al. (Ind.) 64 N. E. 616, "would be fraught with danger to the public interests and would render the enforced collection of taxes on private property in which the state

may have an interest as mortgagee or otherwise, almost or quite impracticable."

When the state by process of court sells the land for the mortgage lien with the proviso of a subsisting perpetual lien for taxes accrued, if the sale does not bring enough to reimburse the state for its trust fund mortgage, then the state has two alternatives: (1) To secure from the Legislature an appropriation to reimburse the trust fund for the loss, as the state is pledged to make good the loss: or (2) to acquire authority (if it already has not that right by reason of implication of the right of a further investment of the trust fund to protect that already invested) to pay the tax for the purpose of protecting the invested funds.

This conclusion, in our judgment, has the effect of making the lien claims of the state, in the final analysis, coequal.

In the case of Hughes County v. Henry (S. D.) 202 N. W. 286, dealing with the subject-matter, it is said:

"It is only in case the Legislature has clearly designated the lien of the mortgage to be superior to the lien of taxes that the board could be said to be absolved from the duty of paying delinquent taxes on the lands covered by the mortgage loans. As above intimated, it may be seriously questioned whether the Legislature could lawfully make the lien of taxes subordinate," and "If the lien of the taxes and of the rural credit mortgage are co-ordinate and of equal rank, then the duty of the board to pay the taxes is none the less clear, for it would not be seemly for one arm of the state to take a position unless clearly authorized so to do that would tend to embarrass the functioning of the state government," and "We think the duty of the board to pay taxes, permission being given, may safely rest upon the broad ground of the right of self-preservation of the state and of its governmental subdivisions."

And, further, under the law of South Dakota relative to farm loans based on their trust fund for school purposes, it is said:

"The payment of taxes is an incident to the making of a loan. The board has the power to pay taxes from any fund it can use in making of loans."

We do not think the state was engaged in a private enterprise in loaning the school fund on real estate mortgages for the reason of the mandatory provisions of the Constitution. The state was performing a governmental function, to which it was bound, which it pledged its faith to perform before it came into existence as a state. See article 11, section 6, and article 11, section 1, of the Constitution.

See, also, Choctaw Pressed Brick Co. v. Townsend, 108 Okla. 235, 236 Pac. 46, reference to mandatory functions relative to private enterprises of the sovereign:

"The rule would be different, however, if the engaging in business enterprises * * * were mandatorily made a governmental function by the Constitution. * * *"

In that case, article 2, section 31, of the Constitution applied as the only constitutional authorization of the state's right to engage in the specified business. Not so, however, in the case at bar.

In 12 Corpus Juris, "Constitutional Law," p. 786, sec. 219, it is said:

"Whether or not a particular statute is constitutional is a matter of law and must be tested not by what has been done under it, but by what the law authorizes to be done under its provisions. * * * The natural and reasonable effect of the statute on the right involved is a controlling consideration, and a statute not objectionable on its face may be judged unconstitutional because of its effect in operation. In ascertaining the effect of a statute the courts will look beyond mere forms of expression and consider the object and purpose of the legislation. In passing on the question the court will not necessarily confine itself to facts in the complaint and admitted by the demurrer, but will act in the light of all matters of which the court may take judicial notice. * * *"

The judgment of the trial court is modified to the extent that it declares the tax lien to be secondary to the mortgage lien and to the extent that the lien for taxes is barred, by conforming the same to the views herein expressed, otherwise the judgment is affirmed.

BRANSON. V. C. J.. and HARRISON. MASON, PHELPS, and LESTER, JJ., concur. CLARK. J.. dissents.

Note.—See under (1) 37 Cyc. p. 1145 (Anno). (2) 37 Cyc. pp. 1138, 1139, 1143. (3, 4) 37 Cyc. p. 1147.