

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
XXX~~WILL WILSON~~XXX
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-5013
Re: Authority of Tax Collector
to issue certificate showing
all taxes paid on property
which is in receivership and
taxes are delinquent after
sale of such property by re-
ceiver "free and clear of all
encumbrances and claims of
any person or party of any na-
ture whatever," under order of
court.

The facts reflected by your letter of December 8, 1942, supplemented by your letter of January 26, 1943, and the enclosures therewith, may be stated as follows:

In 1925, a receiver was appointed to take charge of, and operate certain oil leases. The appointment was made at the instance of plaintiffs who owned certain interests in the oil lease. The receivership is still pending and the operation of the property has shown a loss during each year of the receivership.

At the time of the appointment of the receiver State and county ad valorem taxes against this property were delinquent for the years 1923 and 1924, and same was assessable for such taxes for the year 1925. The State intervened in the receivership proceeding, and in 1931, the court rendered judgment in favor of the State against all other parties to the proceeding (including the receiver) for state and county taxes in the sum of $6464.65, said sum representing state and county taxes, penalties and interest for the years 1923 to 1929, inclusive, and foreclosed the tax lien on the property in the hands of the receiver.

No further action appears to have been taken by the State. No part of such judgment has been paid, and none of the state and county taxes which have accrued during the period from 1930 to the present time have been paid.

On July 25, 1940 the Court ordered the receiver to sell all of the property on which the State's lien for taxes had been foreclosed, and on which taxes had accrued each year during the receivership, "free and clear of all encumbrances and claims of any person or party of any nature whatever". Under this order of the court the property was sold, the receiver undertaking to convey same free of such encumbrances, and such sale was by the Court confirmed. The proceeds of the sale of the property were later disbursed in payment of receiver's fees and operating costs under order of the Court.

The purchaser at receiver's sale now desires a tax certificate, certifying that all state and county taxes have been paid through the year 1940.

You request the opinion of this department advising whether the county tax collector is authorized to issue cancellation certificates and thereafter certify that all state and county taxes on said property for such years have been paid.

The precise question here involved has never been passed upon by the courts of this state. Upon the general question of subordination of previously existing liens to the costs of receivership, the courts have passed many times. The leading case is that of Craver v. Greer, 107 Tex. 356, 179 S. W. 862, in which the Supreme Court said:

> "Where a lienholder procures the appointment of a receiver with the power to operate the property, which is subject to his lien, in a continuance of the business to which it is devoted, it is only just that the consequent expenses should take precedence over his lien, since it must be anticipated that such operation will be attended with cost, and possibly in excess of income. Heisen v. Binz, 147 Ind. 284, 45 N. E. 104. The same rule should be applied to a party who, while not directly the applicant upon whose petition the received is appointed is privy to the action which results in the appointment. But the indebtedness of the receiver has no right of priority over the vested lien of a creditor who neither applied for the receivership nor was a party to its procurement, merely because he is a party to the suit." (Emphasis ours)

The rule announced by the Supreme Court in Craver v. Greer has been consistently followed by the courts of this State. Mayotown Lumber Co. v. Nacogdoches Grocery Co., (Com. App.) 236 S. W. 704; Wagner Supply Co. v.

Bateman, 260 S.W. 672; Hayes v. Gardner, 40 S.W. (2d) 917; Lynch David-
son Co. v. Hinnant, 93 S. W. (2d) 532; Texas Steel Co. v. Huey & Philp Hard-
ware Co., 110 S. W. (2d) 9674. It is true that the general rule is qualified to
the extent that the court has the power, in the exercise of a sound judicial
discretion, to charge the liabilities of the receiver against the corpus of the
receivership estate where such estate is "affected with a public interest"
and the public has an interest in the continued operation of the property and
such expenses are necessary in such continued operation. Craver v. Greer,
supra; Ellis v. Water Co., 86 Tex. 109, 23 S. W. 858; Clint v. Houston Ice &
Brewing Co., 106 Tex. 508; 169 S. W. 411.

The property here involved is private property. The receivership pro-
ceeding was instituted by its owners. It is neither public nor quasi-public in
its nature and could not be said to be "affected with a public interest." The
State had no part in procuring the appointment of the receiver.

The fact remains, however, that in 1928, some three years after the ap-
pointment of the receiver, the State intervened in the proceeding, bringing suit
for some taxes which had accrued and constituted a lien on the property at the
time of the appointment and for some taxes which had accrued subsequent to
the appointment of the receiver. The court thereafter rendered judgment for
the State as against all other parties to the suit which judgment is regular on
its face establishing the State's claim as a lien "superior and prior" to "all
other claims, interests, rights, titles and liens of whatsoever kind or charac-
ter held, claimed or owned by any person or persons whatsoever" on the prop-
erty here involved, and foreclosed the lien as against the receiver and all other
parties to the suit. No objection has been raised to the judgment. This judg-
ment of the court did not create the right of precedence of the State's lien for
taxes, but simply established the existence of the right. Mayotown Lumber Co.
v. Nacogdoches Grocery Co., supra. The legality of the taxes and the existence
of the lien have thus been adjudicated by the court. Likewise the priority of
that lien has been adjudicated.

No claim appears to have been made by the State for taxes which have
accrued on the property since the year 1930. As to such taxes it cannot be
said that the State has sought to invoke the aid of the receivership proceeding
in their collection, and as to these taxes the State has not become a party to
the receivership proceeding.

The question to be answered here is whether the order of the court direct-
ing the receiver to sell the property here involved, free and clear of all encum-
brances, is sufficient to free the property so sold from the State's lien for taxes
previously adjudicated and established by the same court as well as to free it
from the State's lien for taxes which accrued subsequent to such judgment.

Many jurisdictions hold that the court is authorized to subordinate the lien for taxes to the receiver's costs and the cost of operation of the property. We find no such case decided by any court of a state having constitutional and statutory provisions with reference to tax liens similar to our own. Both our constitution and our statutes are explicit in defining the character of the tax lien and the duration of its existence.

Pertinent constitutional and statutory provisions are the following:

Section 55 of Article 3 of our constitution reads:

"The Legislature shall have no power to release or extinquish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years." (Emphasis ours).

Section 1 of Article 8 of the constitution provides, in part that:

"Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as provided by law. . . . ." (Emphasis ours)

Section 10 of Article 8 of the Constitution provides that:

"The Legislature shall have no power to release the inhabitants of, or property in, any county, city or town from the payment of taxes levied for State or county purposes. . . ."

Section 11 of the same Article provides that:

"All property, whether owned by persons or corporations shall be assessed for taxation, . . . . And all lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer."

By Section 15 of Article 8, the Constitution provides that:

"The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide." (Emphasis ours)

Article 7145, R. C. S., provides that all property, not expressly exempted by the statutes shall be subject to taxation. Article 7146 defines "real property" as the land itself and all improvements and fixtures thereon, including all mines, minerals, etc., in and under the same. Article 7172, R. C. S., provides that:

"All taxes upon real property shall be a lien upon such property until the same shall have been paid. And should the assessor fail to assess any real estate for any one or more years, the lien shall be good for every year that he should fail to assess for; ...." (Emphasis ours)

Article 7336f, V.A.C.S., bars the collection of ad valorem taxes which became due before December 31, 1919. The Legislature has not seen fit to bar the collection of any such taxes which have accrued since that date.

The quoted constitutional and statutory provisions clearly evidence the jealous care with which the framers of the constitution and the makers of our laws have sought to safeguard the revenues of the State. They speak, most emphatically, not only the intent that taxes should constitute a lien upon the land against which they were assessed (Const., Art. 3, Sec. 55; Art. 8, Secs. 1, 10 and 15), but that such a lien should continue in force and effect until the taxes secured thereby have been paid, or by act of the Legislature have been released, after they have been due for more than ten years. (Const., Art. 8, Sec. 15; Art. 7172, R. C. S.)

The State of Oklahoma has constitutional and statutory provisions with respect to tax liens, very similar to ours. In the case of Edwards v. Pratt, 42 Pac. (2d) 506, the Supreme Court of that State had before it the identical question here presented to us. The court stated the question thus:

"Does a court of equity in Oklahoma in a general re-
ceivership proceedings have jurisdiction to order and sell
property in its custody free and clear of all delinquent
taxes."

The Oklahoma constitutional provision was identical with our
Constitution, Art. 8, Sec. 10, insofar as the latter is applicable to this fact
situation. The Oklahoma statute provided that taxes upon real property
should be a "perpetual lien." Our statute (Art. 7145, R.C.S.) provides
that taxes upon real property "shall be a lien upon such property until the
same shall have been paid." The Oklahoma Constitution provided that the
Legislature should pass no law "exempting any property from taxation,"
except as provided in the Constitution. Our Constitution provides (Art. 8,
Sec. 1) that "all property in this State . . . . shall be taxed."

In holding that the court order authorizing the receiver to sell
property free and clear of "all taxes" was void the Oklahoma Supreme Court
in Edwards v. Pratt, said:

"Taxes are a perpetual lien, and having attached to the land,
this lien cannot be directed by a sale under judicial process whe-
ther upon execution, decree of court, or foreclosure of mortgage.

"The third syllabus in the case of Board of Commissioners
of Woods County et al v. State ex rel. Commissions of Land
Office, 125 Okl. 287, 257 Pac. 778, 53 A.L.R. 1128, says: 'A
perpetual tax lien having attached to land is not divested by a
sale of the land under judicial process, whether upon execution,
decree of court, foreclosure of mortgage, or any other proceed-
ings in view of section 9724, compiled Oklahoma Statutes 1921,
and article 10, § 5, of the Constitution.'

"In the body of the opinion, the case of Bloxham v. Consumers'
Electric Light & Street Railroad Company, 36 Fla. 519, 18 So. 444,
29 L.R.A. 507, 51 Am. St. Rep. 44 is quoted: 'The state's lien for
taxes, having attached by the assessment of the property, could
not be divested by a subsequent judicial sale, even though the de-
cree under which the sale was made should have directed that the
property should be sold free from all incumbrances. . . . Mesker
v. Koch, 76 Ind. 68.'

". . . .

"The judgment of the receivership court is void. This appears
upon the face of the record, and it is subject to attack any time and

> any way, and the unpaid taxes were a valid outstanding lien at the time Edwards conveyed to Pratt and the covenant of warranty in the deed was breached."

The fact situation, the statutes and the constitutional provisions before the Oklahoma Supreme Court are almost identical with those confronting us here. We think that case correctly disposed of the question and that the same reasoning applies and controls here. We are, therefore, of the opinion that in so far as the order of the court undertakes to free the land here involved from the state and county tax liens it is void upon the face of the record. Consequently, we advise you that the tax collector is without authority to issue tax cancellation certificates cancelling such taxes, and further advise that he is without authority to issue tax certificates showing that such taxes have been paid until such time as they have, in fact, been paid.

Trusting that the foregoing fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Fowler Roberts*

Fowler Roberts
Assistant

APPROVED FEB 19, 1943

*[signature]*

FIRST ASSISTANT
ATTORNEY GENERAL

FR:ff

APPROVED
OPINION
COMMITTEE
By *[signature]*
Chairman