## STATE ex rel. COM'RS OF LAND OFFICE v. NATIONAL BANK OF COMMERCE OF PAWHUSKA et al.

No. 18847. Opinion Filed June 4, 1929.

Rehearing Denied Oct. 29, 1929.

Geo. E. Merritt, for plaintiff in error.

Gray & Palmer and Elmer J. Black, for defendants in error.

ANDREWS, J. The state of Oklahoma on the relation of the Commissioners of the Land Office instituted a suit against the makers of a promissory note to recover the amount due thereon and against the makers of the note and claimants of interests in the land covered by the mortgage given to secure the payment of said note, for foreclosure of said mortgage. Among these claimants was the National Bank of Commerce of Pawhuska, Okla., which claimed an interest in the land by virtue of a tax sale certificate against said land for the 1923 ad valorem taxes against the land, and Mrs. Elmer J. Black, who claimed an interest in the land by virtue of a tax sale certificate against said land for the 1924 ad valorem taxes against the land.

The issue presented on appeal affects only the issue between the plaintiff and these two defendants, and other issues in the trial will not be discussed herein.

The evidence shows that the value of the land at the time of the trial was less than the amount due under the mortgage and under the two tax sale certificates.

The court found:

"That the liens of the National Bank of Commerce under their tax sale certificate and of Mrs. C. J. Black under her tax sale certificate are superior liens to the lien of the state of Oklahoma on relation of the Commissioners of the Land Office"

—and:

"That said plaintiff has a lien upon said land and tenements in said petition described by virtue of a first mortgage in said petition set out to secure the payment of said indebtedness, which lien is subject to the tax liens of the cross-petitioners, National Bank of Commerce and Mrs. E. J. Black"

—and ordered:

"It is therefore ordered, adjudged and decreed by the court that the defendants National Bank of Commerce and Mrs. E. J. Black have judgment of foreclosure of their tax liens under their tax sale certificates, and that the state of Oklahoma on relation of the Commissioners of the Land Office, have judgment of foreclosure of its mortgage lien.

"It is further ordered, adjudged and decreed by the court that the lien of the defendants National Bank of Commerce and Mrs. E. J. Black are superior liens to the lien of the plaintiff the state of Oklahoma on relation of the Commissioners of the Land Office"

—from which findings and judgment, after motion for new trial was overruled, plaintiff appeals to this court.

For the purpose of convenience the plaintiff, state of Oklahoma, will be referred to herein as plaintiff, the defendant National Bank of Commerce, as the bank, and Mrs. Elmer J. Black, as Mrs. Black.

The contention of the plaintiff on appeal is that its lien on the property involved in the action is first and prior, and that delinquent taxes are subject at all times to the lien of the Commissioners of the Land

Office, or if the lien of the Commissioners of the Land Office is inferior to that of the lien of the state for taxes, it is superior to the lien of the holder of a delinquent tax sale certificate.

The bank and Mrs. Black contend that the lien of the state for taxes is superior to that of the Commissioners of the Land Office, and that the purchaser of a delinquent tax sale certificate acquires the lien of the state for taxes and thereby acquires and holds a lien which is superior to that of the Commissioners of the Land Office.

Prior to statehood and under the provisions of the Enabling Act, certain land was granted to the state upon its admission into the Union, and in lieu of corresponding land in the Indian Territory a grant of $5,-000,000 was made to the state upon its admission into the Union. Both grants were in trust and were conditional upon acceptance, with the trust provisions, by the state.

Those grants were accepted, together with the trusteeship thereof, by the adoption of the Constitution of Oklahoma, and it was provided therein that (section 1, art. 11) :

"* * * And the faith of the state is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated."

It was further provided that (section 3, art. 11) :

"* * * And no part of the fund sha'l ever be diverted from th's purpose, or used for any other purpose than the support and maintenance of common schools for the equal benefit of all the people of the state."

It thereupon became the duty of the state of Oklahoma under its Constitution to preserve that fund inviolate.

That fund could be of no benefit to the state unless a revenue could be derived therefrom, and in order that there might be no question as to how the fund should be invested, it was provided in the Constitution (section 6, art. 11) :

"The permanent common school and other educational funds shall be invested in first mortgages upon good and improved farm lands within the state (and in no case shall more than 50 per centum of the reasonable valuation of the lands without improvements be loaned on any tract), Ok'ahoma state bonds, county bonds of the counties of Oklahoma, school district bonds of the school district of Oklahoma, United States bonds;

preference to be given to the securities in the order named"

—and that there might be no question as to the management of the fund, it was provided (section 6, art. 11) :

"The Legislature shall provide the manner of selecting the securities aforesaid, prescribe the rules, regulations, restrictions, and conditions upon which the funds aforesaid shall be loaned or invested, and do all things necessary for the safety of the funds and permanency of the investment"

—thus placing with the Legislature the power to legislate and the duty to protect by legislation that fund. The Legislature was required thereby to prescribe the rules, regulations, restrictions, and conditions upon which the funds aforesaid should be loaned or invested and to do all things necessary for the safety of the funds and permanency of the investment. See, also, section 32, art. 6.

The Legislature, in fulfil'ment of its duties, at its first session, authorized the State Treasurer to receive the money from the Treasurer of the United States (article 1, chapter 76, S. L. 1907-1908), and provided for an investment of the funds by the Commissioners of the Land Office, as follows:

"All of the permanent school funds shall be invested in first mortgages upon good and improved farm lands within the state (and in no case shall more than 50 per cent. of the reasonable value of the lands, without improvements, be loaned upon any tract). The interest on said farm loans shall not exceed five per cent. per annum. Oklahoma state bonds, county bonds of the counties of this state, school district bonds of the school districts of the state, and United States bonds, and in the investment of said funds preference shall be given to such securities in the order named."

It was provided in section 45 of art. 5 of the Constitution that:

"The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this Constitution"

—which authority was limited to some extent, as will be hereafter set forth.

The rule for construction of the Constitution is set out in section 36 of art. 5, wherein it is provided that:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same

or any other subject or subjects whatsoever"

—by reason of which the general rules for construction of the constitutional provisions were changed ,and under that provision the various sections of the Constitution must be construed together to determine the intent of the people.

The power of the state to tax, while not specifically stated in the Constitution, is shown by implication, section 5 of art. 10, wherein it is said:

"The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects"

—and section 50, art. 5, as follows:

"The Legislature shall pass no law exempting any property withis (within) this state from taxation, except as otherwise provided in this Constitution"

—and section 2, art. 10:

"The Legislature shall provide by law for an annual tax sufficient, with other resources, to defray the estimated ordinary expenses of the state for each fiscal year."

Attention is called to the fact that though the Constitution provides for a tax (section 2, art. 10), the valuation of property for taxation (section 8, art. 10), the maximum rate of taxation (sections 9 and 10, art. 10), and many other details, there is no provision therein making taxes a lien upon property.

Section 4 of the Schedule of the Constitution provided that it should take effect immediately upon the admission of the state into the Union. Under the provisions of section 2 of the Schedule, the laws in force in the territory of Oklahoma at the time of admission of the state into the Union and which are not repugnant to the Constitution or locally inapplicable shall extend to and remain in force in the state until they expire by their own limitations or are altered or repealed by law. Section 43 of art. 5 provides that the Legislature shall, in the year 1909, make provision by law for revising, digesting, and promulgating the statutes of the state.

At the session of 1909, the Legislature adopted an act to provide for raising and collecting revenue and to codify and revise the laws of the state relating to revenue, all of which was recorded as chapter 38, S. L. 1909. Among other things, that act provided that all property in the state except such as is exempt shall be subject to taxation. Section 1, art. 1 (section 9574, C. O. S. 1921). An annual ad valorem tax levy was provided by section 2, art. 7 (section 9690, C. O. S. 1921). Taxes upon real property were made a perpetual lien. Section 1-a, art. 9 (section 9724, C. O. S. 1921). The treasurer was authorized to advertise and sell all real estate upon which taxes are a lien for such tax. Section 6, art. 9 (section 9730, C. O. S. 1921). And the purchaser thereof was entitled to receive a certificate in writing evidencing the same, and **"the purchaser acquires the lien on the land for** the delinquent tax." Section 13, art. 9. This section was continued without change until the revision in R. L. 1910, section 7403, wherein the language was changed to read, **"The purchaser shall have a lien on the land for the delinquent taxes"** (section 9737, C. O. S. 1921). Where there was no purchaser, the county was authorized to purchase, and thereafter any person desirous of purchasing the interest of the county might do so and receive an assignment of the certificate of purchase held by the county, "which assignment and transfer shall convey unto said purchaser all rights of said county, both legal and equitable, in and to said real estate as much so as if he had been the original purchaser at said tax sale." Section 17, art. 9, Sess. Laws 109, which section was continued without change as section 7408, R. L. 1910, and was amended by section 2, chapter 130, S. L. 1919, to provide, "which assignment and transfer shall convey to the purchaser all the right and interest of said county to said real estate as fully as if he had been the original purchaser at said tax sale." (Section 9742, C. O. S. 1921.) It was next provided (section 21, art. 9) as follows:

"Whenever any lands shall be sold for delinquent taxes under the provisions of this act, upon which any mortgage or other lien exists in favor of the state of Oklahoma or the Commissioners of the Land Office, or any other commission, board or officer having power to loan public funds, or any funds under the control of the state upon real estate security, such tax shall be subject at all times to the lien of the state or of the Commissioners of the Land Office, or of such commission, board or officer"

—which section was continued without change until the Revised Laws of 1910, section 7414, wherein it was changed to read as follows:

"Whenever any lands shall be sold for delinquent taxes under the provisions of this article, upon which any mortgage or other lien exists in favor of the state of Okla-

homa, or the Commissioners of the Land Office, or any other commission, board, or officer having power to loan public funds, or any funds under the control of the state upon real estate security, such tax shall be secondary at all times to the lien of the state, or of the Commissioners of the Land Office, or of such commission, board or officer." (Section 9748, C. O. S. 1921.)

Provision was then made for the issuance of a deed after the redemption period expired, "which shall vest in the grantee an absolute estate in fee simple in such lands, subject, however, to all claims which the state may have thereon for taxes or other liens or incumbrances." Section 22, art. 9 (section 9749, O. O. S. 1921).

When the deed is issued, the certificate is canceled and filed away with the county clerk. Section 22, art. 9 (section 9755, C. O. S. 1921).

When the county treasurer bids off the real estate in the name of the county, he is required to make out a certificate of purchase to the county in the same manner and form as if the sale had been made to any other purchaser, and retain the same in his office, and if unredeemed for two years and no person had offered to purchase the same for the taxes, costs, and penalty due thereon, the county treasurer was authorized to advertise and sell the real estate at public auction. Section 19, art. 9. This was amended, S. L. 1919, page 185, to provide that the county treasurer shall make a note of the bid and purchase upon his record rather than to issue a certificate therefor (section 9743, C. O. S. 1921).

After the sale the treasurer was required to file with the county clerk a return thereof. Section 19, art. 9. There was no provision made for the issuance of a deed. This was amended, S. L. 1919, page 185, to provide for the issuance of a deed, .

"* * * which deed shall expressly cancel and set aside all taxes, penalties, interest and costs previously assessed or existing against said real estate, * * * and such deed shall vest in the purchaser of said real estate an absolute and perfect title in fee simple in said land. * * *" Sec. 6.

These legislative enactments are all in conformity with the provisions of our Constitution, and all were necessary to carry into effect the provisions of our Constitution.

Although the state has power to tax, that tax is not a lien unless made so by the Constitution or statutes.

"A tax levied and assessed upon specific property is not a lien on that or any other property of the owner unless expressly made so by statute." 37 Cyc. 1138.

The fact that taxes are made a lien on property does not make the taxes a first lien.

"* * * But this preference does not belong to the tax lien unless it is so declared by statutes, and a law, for example, which merely enacts that taxes shall be a lien on real property does not make them a first lien." 37 Cyc. 1144.

The Legislature had authority to make taxes in Oklahoma a first lien on real estate, 37 Cyc. 1143, and did so, which lien is "secondary at all times to the lien of the state or of the Commissioners of the Land Office, or of such commission, board or officer"

—when the lands are sold for taxes.

"It has been held, under a statute declaring taxes on real estate to be a perpetual lien thereon, that the lien of a county for taxes is not extinguished by the county's bidding in the land at a sale for such taxes, but continues until the taxes are in fact received." 37 Cyc. 1149.

But on the other hand,

"A valid sale of land for taxes discharges the lien, not only of the taxes for which the sale was made, but of any others which were delinquent at the time." 37 Cyc. 1150.

"Authority to sell real estate for delinquent taxes must be expressly conferred by statute, and can be exercised only in the precise cases specified in the law." 37 Cyc. 1280.

"Ordinarily the doctrine prevails that a valid tax sale will cut off the liens of all taxes assessed for any years previous to that for which the sale was made." 37 Cyc. 1477.

"It is within the sovereign power of a state to subject all the property situated therein and not otherwise exempt to taxation. The state is obligated to exercise the utmost good faith to collect the taxes on property necessary to liquidate the securities of its municipalities. When, however, the tax charge against property is in excess of its value, a state may, within the exercise of its sovereign power, after the exercise of good faith to collect the delinquent taxes due thereon, cancel or set aside such delinquent taxes or any portion of same and place the property upon the tax rolls and thus make it help bear the burdens of government." Ledegar v. Bockoven, County Treas., 77 Okla. 58, 185 Pac. 1097.

This court in Board of Com'rs of Woods County et al. v. State ex rel. Com'rs of the

Land Office et al., 125 Okla. 287. 257 Pac. 778, had under consideration the authority of the Commissioners of the Land Office to foreclose a mortgage and thereby foreclose the lien of the state for taxes.

That case was submitted on an agreed statement of facts from which it did not appear that there had been a sale of the property for taxes, and the county treasurer and the board of county commissioners were defendants therein claiming a lien for taxes. This court in that case held that the tax lien on the property could not be divested by a sale of the land under a foreclosure proceeding, and that a purchaser at such a sale will take the title subject to the existing tax lien.

The court, in discussing the effect of a sale of the land for taxes, said that at such a sale the purchaser would take subject to the lien of the Commissioners of the Land Office. Under that holding, if section 9748, C. O. S. 1921, extinguishes the state's lien upon the real estate for taxes, it is unconstitutional, but under the rule of construction followed in this state. the meaning of the statute, if any doubt exists, must be resolved in favor of the law.

"In construing a statute to ascertain if the same be in violation of the Constitution, if the proper construction is doubtful, this doubt must be resolved in favor of the law, though such construction may not be the more natural interpretation of the language used." Ledegar v. Bockoven, supra.

This act, being susceptible of two constructions, will be given that which will uphold its constitutionality.

"Where an act is susceptible of two constructions. one of which will uphold the constitutionality of the act, a court must adopt that construction which will uphold the law. and this the court must do if it be in doubt as to which construction to follow." Ledegar v. Bockoven, supra.

We, therefore, hold that section 9748, supra, was not intended to, and does not, divest the lien of the state for taxes, and that that section is a valid legislative enactment under the provisions of the Constitution for the purpose of protecting the trust funds held by the Commissioners of the Land Office, and, as was said in that case:

"The judgment may foreclose the mortgage lien and direct a sale of the lands and direct the payment of all the proceeds of the sale to the payment of the mortgage lien if necessarily all is required, but the tax lien cannot be swept aside and held for naught." Board of County Commissioners v. State ex rel. Commissioners of the Land Office, supra.

The purchaser at the mortgage foreclosure sale takes the title to the land subject to the lien of the state for the taxes due to the state.

In the Woods County Case it was further stated:

"Should the lands be sold for taxes without a foreclosure of the mortgage existing, the purchaser would take the place of the mortgagor, and the state would not be barred or precluded from asserting and maintaining an existing claim or right to or lien upon such real estate in favor of the state by virtue of its trust fund mortgage lien. In fact, by section 9749, C. O. S. 1921, relative to tax deeds, it is provided that such deed 'shall vest in the grantee an absolute estate in fee simple in such lands, subject, however, to all claims which the state may have thereon for taxes or other liens or incumbrances' "

—which is the proper rule and is now announced as the rule in this case.

It is contended that the right of the purchaser of a tax sale certificate is that of the state, and that section 9748, supra, is no authority to divest the ho'der of the tax sale cerificate of his lien on the property. There is no merit in that contention. In the first place, the holder of the tax sale certificate, either by purchase at a tax sale or by purchase from the county treasurer after tax sale, acquires only the rights given by the statute, for in the absence of a statute he would have no rights whatever. The rights given him by the statute are to recover the taxes with interest, penalty, and costs within the statutory period, or if not so tendered, to receive a deed to the property, which deed is "secondary" to the rights of the Commissioners of the Land Office. For this court to hold that the holder of a tax sale certificate is entit'ed to any more than that is for this court to legislate by judicial decree. The Legislaure, having the authority to give the purchaser at a tax sale other rights, has not done so. At the time the holders of the tax sale certificates in this case purchased the same, they did so with full knowledge that unless the taxes were paid their sole remedy would be to ask and receive a deed, and that the only authority in the law of Oklahoma for the issuance of that deed contained a specific provision that the title acquired thereby would be "secondary" to the rights of the Commissioners of the Land Office.

Under the provisions of section 9719, C. O. S. 1921, if any person neglects to attend and pay his taxes until after they have become delinquent,

"* * * the treasurer is directed and required to collect the same **in the manner provided by law."**

That manner is, in the case of real estate, to advertise the real estate for sale and offer it for sale at the time and place fixed by the statute. At that time any person may bid for the whole or any part of the real estate, the amount of the tax, with interest, penalty, and cost. The treasurer accepts the bid of the one who offers the amount of the taxes, interest, penalty, and cost for the smallest portion of the real estate, and issues to the purchaser a certificate. The county treasurer has thereby collected the tax on the land "in the manner provided by law," and the lien of the state for taxes is thereby divested as much so as though the owner of the land had paid the tax with the interest, penalty, and cost thereon. The lien of the state for taxes has ceased to exist.

But it is said that the purchaser of the tax sale certificate has a lien on the land for the delinquent taxes. It is true that he has a lien, but there is nothing in the law of Oklahoma that fixes the priority of his lien with reference to that of the state. In the abence of such a statute, this court will not say that his lien is prior to that of the state. In fact, his lien, at the time it attaches, is junior and inferior, not only to the lien of the Commissioners of the Land Office, but to that of the state for taxes. If the subsequent tax on the real estate has not been paid, there is at the time of the purchase by him other delinquent taxes on the land which are a lien on the land and which, under all of the decisions. is superior to his, and for which, after the expiration of the proper time, if the same is not redeemed by the payment of the tax, another tax sale certificate may be issued, which second tax sale certificate will be superior to his.

The lien of the state for taxes is, under our statute, perpetual, and no sale or proceeding of any kind can divest the state of that lien. but the lien of a holder of a tax sale certificate is at all times subject to the lien of the state for taxes, it is subject to the holder of any tax sale certificate issued at a sale for taxes for any subsequent year, and it is subject to the lien of the Commissioners of the Land Office under its mortgage.

It is announced that if this court places this construction upon these statutes, no one will purchase, at a tax sale, land on which Commissioners of the Land Office hold a mortgage. If that be true, then the lien of the state for taxes will continue. But we are not willing to admit that that is true. There are many instances where a purchaser of a tax sale certificate is thereafter divested of some of his rights; for instance, he may buy a certificate on land erroneously or unlawfully assessed and thereby be required to file a claim with the county commissioners for a refund of his money with legal interest, or he may purchase a certificate on land belonging to a person under disability and be thereby required to accept his money with 10 per cent interest, or he may purchase a certificate at a sale that is void upon its face and thereby lose his investment entirely. That is the chance he takes, and it is that chance that justifies the Legislature in allowing him 18 per cent. on his investment or to procure a deed to a valuable tract of land for a small investment.

Or if no person offers the amount of the taxes, interest, penalty, and cost, the county treasurer may buy in the same for the use and benefit of the county, and thereafter any person desiring to purchase the interest of the county may do so.

"* * * by paying to said county treasurer the amount of all of the taxes ,penalties. interest, and costs of sale and transfer up to date of said purchase." Section 2, chapter 158, S. L. 1923.

—and thereupon the treasurer shall assign and deliver to him a certificate of purchase. The treasurer has thereby collected the amount of the taxes, interest, penalty, and cost "in the manner provided by law." Thereupon the lien of the state for taxes has ceased to exist. But it is said that under said section 2, assignment to the purchaser conveys to him "all the rights and interest of said county to said real estate," including the lien of the state for taxes. That is not true, for section 2 provides:

"* * * Which assignment and transfer shall convey to the purchaser all the right and interest of said county to said real estate as fully **as if he had been the original purchaser at said tax sale."**

As has been hereinbefore stated, the purchaser at the original tax sale does not acquire the lien of the state for taxes.

The territorial court, in Keller v. Hawk,

19 Okla. 407, 91 Pac. 778, held that a tax sale certificate

"* * * is a written certification by the county treasurer of the facts regarding the sale of real estate for taxes, and is the legal evidence upon which the holder thereof is, at the proper time, entitled to a deed, or the redemption money."

To this we would add, "such deed to be in the form and convey the interest defined by the statute providing therefor."

Under the act of 1909, supra,

"The purchaser acquires the lien on the land for the delinquent taxes."

But under section 9737, supra,

"The purchaser shall have a lien on the land for the delinquent taxes."

"The article 'the' directs what particular thing or things are to be taken or assumed as spoken of, and determines what particular thing is meant. It is used before nouns with a specifying or particularizing effort, so that its use immediately preceding 'state' in the constitutional requirement that indictments shall conclude 'against the peace and dignity of the state,' points out the state whose peace and dignity has been offended, and its omission in the indictment is a fatal defect. State v. Campbell, 109 S. W. 706, 712, 210 Mo. 202, 14 Ann. Cas. 403."

This is materially different from "a lien," and the fact that the Legislature saw fit to change this language indicates clearly an intent on the part of the Legislature that the purchaser of a tax sale certificate shall not acquire thereby "the lien" of the state for taxes. There are a few states that hold, under the construction of their statutes, that the purchaser of a tax sale certificate acquires the lien of the state for taxes, but under our statute that is not true.

This distinction is clearly made in Muskogee Times-Democrat v. Commissioners of Muskogee County, 76 Okla. 188, 184 Pac. 591, wherein it is said:

"When an individual purchases at the delinquent tax sale, provided for in section 7397, Rev. Laws 1910, the taxes are paid by him, and the land no longer is delinquent nor are the taxes unpaid. In cases where the county is required to bid the same in, when no one else offers to pay the amount of the taxes due and penalties and costs, a certificate is issued to the county. The county does not pay the taxes due thereon to the county treasurer, nor does the county, township, or school district or subdivision of the county receive their proportionate share of the taxes. The certificate is simply held by the county, with the right to assign the certificate to any one who will pay the amount of taxes, penalty and costs due thereon, and subject to the land being redeemed by the landowner. If the county is unable to assign the certificate to any one for two years, or if the landowner fails to redeem the same within said time, the law then provides that the county, upon proceedings as provided in sections 7409, 7410, and 7411, shall readvertise the property and sell the same to the highest bidder for cash, provided his bid equals the amount of taxes, penalty and cost due on said land, and if no one makes such a bid, then the county may become the purchaser thereof. So it can be seen that the right acquired by the county and an individual are very different. The purchaser of a certificate may proceed and obtain a title through his purchase; this the county cannot do."

Before the holder of a tax sale certificate can procure a deed he must, under the provisions of section 9749, supra, serve a notice, "in the same manner as that of summons in courts of record." There is no provision in our law for service on the state of Oklahoma or upon the Commissioners of the Land Office, and for that reason no tax deed to land could be issued on a tax sale certificate which would extinguish the lien of the Commissioners of the Land Office.

In Fisher et al. v. Brower et al., 159 Ind. 139, 64 N. E. 616, cited with approval in the Woods County Case, supra, it was said:

"At the treasurer's sale of the property for delinquent taxes, appellant Fisher's assignor, with knowledge of the prior incumbrance, bought Lander's right to redeem from the state's mortgage. He made the purchase with his eyes open, and whether the thing purchased was worth the sum paid was simply a matter of judgment freely and voluntarily exercised. After the tax sale the case stood thus: The state still had its mortgage lien unimpaired, its taxes paid, and the purchaser had the right to perfect his title under the tax sale by paying off the state's claim. The same may be said of the contractors who perform work on faith on the promised assessments. These rights of redemption being so held by appellants, when the auditor gave the required notice that he would enforce payment of the mortgage by sale of the property, it then became their imperative duty, if they would maintain their rights to redeem, to come forward and pay off the state's claim, and save the final foreclosure. Failing to do so, they are forever barred from enforcing them. Schnantz v. Schellhaus, 37 Ind. 85."

We, therefore, hold that the lien of the Commissioners of the Land Office created by the execution and delivery of a mortgage securing public trust funds is superior to

the lien of the holder of a delinquent tax sale certificate, and upon a sale of the real estate covered thereby the proceeds should be applied as follows: First, to the payment of the tax liens for delinquent taxes due to the state of Oklahoma for which no tax sale certificates have issued; second, to the payment of the costs of the action, including the cost of the sale; third, to the payment of the amount due to the Commissioners of the Land Office under its mortgage; and fourth, in satisfaction of the claims of the holders of the tax sale certificates. in the inverse order of their issuance.

The judgment of the trial court is reversed, with instructions to enter judgment in accordance herewith.

RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur.

LESTER, V. C. J., dissents.

MASON, C. J., and CLARK and HUNT. JJ., absent.

Note.—See "States," 36 Cyc. p. 871, n. 81. "Taxation," 37 Cyc. p. 1477, n. 68.