**STATE ex rel. COM'RS OF THE LAND OFFICE v. BOARD OF COM'RS OF NOWATA COUNTY et al.**

No. 21592. Oct. 17, 1933.

Withdrawn, Corrected, and Refiled Oct. 27, 1933.

Geo. E. Merritt and Haskell Paul, for plaintiff in error.

J. A. Tillotson, Co. Atty., for defendants in error.

ANDREWS, J. Suit was instituted in the name of the state of Oklahoma on the relation of the Commissioners of the Land Office, in the district court of Nowata county, Okla., against the makers of a promissory note and a real estate mortgage securing the same, and other persons claiming interest in the land covered by that mortgage. It sought to recover a judgment for the amount due to it, to have its mortgage foreclosed, and to have all of the defendants barred of any interest in and any right or title to the land secured by the mortgage. Included among the defendants were the county treasurer and the board of county commissioners of Nowata county. They filed an answer in which they claimed a lien for unpaid taxes. The defendant Commerce Trust Company filed an answer in which it claimed a lien by virtue of a certain tax sale certificate owned by it, which evidenced unpaid taxes against the land. The county treasurer and the board of county commissioners asked that they be decreed to have a lien on the land superior to that of the plaintiff. The Commerce Trust Company asked that it be decreed to have a lien thereon co-equal with that of the plaintiff. The cause was tried to the court on an agreed statement of facts. The court rendered judgment in favor of the plaintiff for the amount due to it under its mortgage and for the foreclosure of its mortgage lien on the premises. It rendered judgment in favor of the county commissioners and the county treasurer of Nowata county for the amount of the taxes due to the state, for which amount it adjudged that they have a lien superior to the lien of the plaintiff. It rendered judgment that the lien of the plaintiff was superior to the lien of the Commerce Trust Company. It ordered that, in case the defendants failed for six months from the date of the rendition of the judgment to pay the amounts so found to be due, an order of sale should issue to the sheriff of Nowata county, commanding him to ad-

vertise and sell according to law, without appraisement, the land and to apply the proceeds as follows: First, in payment of the lien for taxes due to the state; second, in payment of the costs of the action, including the cost of the sale; third, in payment of the amount due to the plaintiff; and fourth, in payment of the claim of the holders of tax sale certificates, in the inverse order of their issuance. From that judgment the plaintiff appealed to this court.

That judgment is erroneous in a number of particulars. It is erroneous in that, by its terms, in order to prevent a sale of the land, the owner thereof not only must pay the amount due to the state under the note and mortgage given to the Commissioners of the Land Office, but it must pay all of the taxes due to the state and all amounts due to the holders of tax sale certificates. There is no provision of law for such a requirement. Under the facts shown by the record in this case, the trial court was without authority of law to require the owner of the property to pay the taxes on the land in order to prevent a sale of his property under the mortgage.

The judgment is erroneous in that it is a personal judgment against the owner of the land for the amount of the taxes due thereon. There is no authority of law for the rendition of a personal judgment against the owner of land for the amount of taxes due thereon.

The judgment is erroneous in that it is a judgment in favor of the county treasurer and the board of county commissioners for taxes due to the state. If a judgment could be rendered under the law against the owner of land for the amount of taxes due thereon, that judgment would be in favor of the state and not in favor of the county treasurer and the board of county commissioners.

The judgment is erroneous in that it directs a part of the proceeds of the sale to be used in payment of taxes against the land. That direction carries with it the conclusion that the lien of the state for taxes due to it is superior to the lien of the state under a mortgage given to the Commissioners of the Land Office. That conclusion is in direct conflict with the decision of this court in Board of Co. Com'rs of Woods County v. State ex rel. Com'rs of Land Office, 125 Okla. 287, 257 P. 778, wherein we held that the lien of the state for taxes due to it and the lien of the state under a mortgage to the Commissioners of the Land Of-

fice were co-equal. That holding but gave effect to the meaning of that term, as defined in Webster's International Dictionary, as follows: "To be or become equal to; to have the same quantity, the same value, the same degree or rank, or the like, with; to be commensurate with." In other words, we held that the liens were of equal rank. That we intended to go no further than that is shown by the statement therein that:

"A purchaser at a real estate mortgage sale involving the common school fund is presumed to know that the state has another lien upon the real estate for taxes, in that the public record disclosed the same. Such mortgage sale is subject to an existing tax lien, and should the land be sold for taxes with an existing mortgage thereon to the state based upon loans of the common school fund, the purchaser at such sale would take the place of the mortgagor, but the state would not be barred or precluded from the enforcement of its mortgage lien against such real estate so mortgaged."

We now repeat that a sale in foreclosure of a mortgage to the Commissioners of the Land Office is made subject to the existing tax lien in favor of the state; that a sale of land for taxes is made subject to an existing mortgage on the land in favor of the Commissioners of the Land Office, and that a sale in satisfaction of either lien does not operate to extinguish the other lien.

In other words, the state has a lien on real estate for the amount of taxes due to it and the state has a lien on real estate mortgaged to secure a debt to the Commissioners of the Land Office for the amount of that debt. Those liens are of equal rank. By the provisions of section 12758, O. S. 1931:

"Whenever any lands shall be sold for delinquent taxes under the provisions of this article, upon which any mortgage or other lien exists in favor of the state of Oklahoma or the Commissioners of the Land Office or any other commission, board, or officer having power to loan public funds, or any funds under the control of the state upon real estate security, such tax shall be secondary at all times to the lien of the state or of the Commissioners of the Land Office, or of such commission, board, or officers."

An examination of that statute discloses no legislative intention thereby to cause either the lien of the state for taxes or the lien of the state under a mortgage to the Commissioners of the Land Office to be superior to the other lien. Those liens are co-equal. They are of equal rank. By its

terms the statute applies only when land, upon which any mortgage or other lien exists in favor of the state of Oklahoma or the Commissioners of the Land Office or any other commission, board, or officer having power to loan public funds, or any funds under the control of the state upon real estate security, shall be sold for delinquent taxes. By the terms of the act, when such lands have been sold for delinquent taxes, such tax shall be secondary at all times to the lien of the state or of the Commissioners of the Land Office, or of such commission, board, or officer. In other words, under the terms of the act, the act is operative only when such land has been sold for delinquent taxes. In determining the meaning of the language used it is necessary to consider the purpose intended to be served thereby. Undoubtedly that purpose was to obviate the necessity of the state paying taxes on land upon which it held a mortgage, in order to prevent a sale of such land for taxes and the consequent loss to the state of the amount of indebtedness secured by its mortgage. With that purpose in mind, we find, and therefore hold, that the statute was intended to apply only when there has been a sale of such land for delinquent taxes to some person other than the state, and where there has been a sale of such land for taxes to the state and a subsequent issuance of a tax sale certificate or tax deed to some person other than the state, which would operate to defeat the lien of the state for the amount of the indebtedness secured by the mortgage, and that the Legislature intended thereby that the lien of the state for taxes on land and the lien of the state for an amount secured by a mortgage on land are co-equal, but that the lien of the state for the amount of any indebtedness secured by a mortgage on the land is superior to the lien of any individual for taxes.

In Muskogee Times-Democrat v. Board of Com'rs of Muskogee County, 76 Okla. 188, 184 P. 591, there is an extended discussion of the rights acquired by the county where it is a purchaser at a tax sale and the rights of an individual purchaser thereat. Therein it is said:

"The second contention of the plaintiff in error is that the resale of lands, as provided in sections 7409, 7410 and 7411. is not the advertising of lands upon which taxes are delinquent, nor are such lands classified as delinquent lands. The lands advertised for resale, as provided for in sections 7409, 7410, and 7411, are those lands which have once been offered for sale as provided in section 7397, for failure to pay the taxes. It is provided by section 7406 that the county treasurer in the sale of delinquent lands controlled by section 7397, in case no other bidder offers the amount due for taxes, penalties, and interest, is authorized to bid off all or any real estate offered for sale in the name of the county, and a certificate of purchase shall be issued to the county. Said section of the statute provides that the county acquires all the rights, both legal and equitable, that any other purchaser acquires by reason of such purchase. While it is true said section of the statute contains the above provision, it will be noticed that the rights of the county are very different from that acquired by an individual when receiving the tax certificate. If an individual purchases at the delinquent tax sale, a certificate is issued to him. He pays the amount of taxes due thereon. The statute then provides that if the same is not redeemed by the owner within two years, the purchaser may proceed to give 60 days' notice to the owner of the land and the person in possession to redeem, and if he fails to redeem said land, the purchaser may acquire a tax deed to the same. When an individual purchases at the delinquent tax sale, provided for in section 7397, Rev. Laws 1910, the taxes are paid by him, and the land no longer is delinquent nor are the taxes unpaid. In cases where the county is required to bid the same in, when no one else offers to pay the amount of the taxes due and penalties and costs, a certificate is issued to the county. The county does not pay the taxes due thereon to the county treasurer, nor does the county, township, or school district or subdivision of the county receive their proportionate share of the taxes. The certificate is simply held by the county, with the right to assign the certificate to any one who will pay the amount of taxes, penalty, and costs due thereon, and subject to the land being redeemed by the landowner. If the county is unable to assign the certificate to any one for two years, or if the landowner fails to redeem the same within said time, the law then provides that the county, upon proceeding as provided in sections 7409, 7410, and 7411, shall readvertise the property and sell the same to the highest bidder for cash, provided his bid equals the amount of taxes, penalty and cost due on said land, and if no one makes such a bid, then the county may become the purchaser thereof. So it can be seen that the rights acquired by the county and an individual are very different. The purchaser of a certificate may proceed and obtain a title through his purchase; this the county cannot do."

The construction given is in conformity with the provision of section 12759, O. S. 1931, that a certificate tax deed shall vest in the grantee an absolute estate in fee simple, "subject, however, to all claims which the state may have thereon for taxes

or other liens or incumbrances." Certainly it cannot be said that the holder of a tax sale certificate has a right in the property superior to the claim of the state for the amount due to the School Land Commission under its note and mortgage given to secure the payment thereof, when, if that tax sale certificate holder secures a deed to the land, his rights under the deed will be subject to all claims which the state may have thereon for taxes or other liens or incumbrances. Such is the effect of the decisions of this court in Board of Co. Com'rs of Woods County v. State ex rel. Com'rs of the Land Office, supra; State ex rel. Com'rs of Land Office v. National Bank of Commerce, 139 Okla. 134, 281 P. 579; and Fullerton v. State ex rel. Com'rs of Land Office, 140 Okla. 122, 282 P. 674. The rules announced by those decisions are not departed from herein, except the statement in State ex rel. Com'rs of Land Office v. National Bank of Commerce, supra, that the proceeds of the sale should be applied to the payment of the tax lien for delinquent taxes due. That statement is specifically overruled. The judgment of the trial court in this case may have been based on that statement.

It appears that the Commissioners of the Land Office saw fit to make the county treasurer and the board of county commissioners defendants in the foreclosure proceedings in order that they might procure a determination of the question of priority between the lien of the state under its mortgage and the lien of the state for taxes. They contend that the lien on the property under the mortgage is superior to the lien of all of the other parties to the action. In effect, that contention is that the lien of the state by reason of a mortgage given to the Commissioners of the Land Office is superior to the lien of the state for taxes due to it. They have overlooked the facts that neither the county treasurer nor the county commissioners have any lien for taxes and that the lien for taxes, if any, is in favor of the state.

We call attention to the decision of this court in City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640. Therein this court said:

"The judiciary system of this state is the creature of the Constitution and the statute laws of the state. The supreme sovereign power of this state rests in the people of the state. The exercise of this power must be through the Legislature or the people by means of the initiative or referendum, and this supreme sovereign power having never authorized the enforcement of tax liens in the courts of this state, no such power or jurisdiction is vested in the district courts"

—and:

"The statutes of this state, sections 9730 to 9749, inclusive, Comp. Stat. 1921, provide a full and comprehensive system by which delinquent taxes on real estate may be collected, but on an examination of the statutes providing for the collection of taxes, the same failed to disclose any authority for the foreclosure of tax liens in the courts of this state, and no such right existed at common law * * *"

—and held:

"The statutes of this state, sections 9730 to 9749, inclusive, Comp. Stat. 1921, provide a full and comprehensive system by which delinquent taxes on real estate may be collected by a sale of such real estate by the county treasurer, the collecting agency. Such method, being the only one authorized by the statutes, is exclusive for the enforcement of such tax liens, and a foreclosure of such liens in the district courts of this state is unauthorized."

An examination of the statute discloses nothing to indicate an intention to confer upon the county, where it is a purchaser at a tax sale, or an individual who purchases at a tax sale, the right to maintain an action for the recovery of the amount of taxes due on the land from the owner of the land or out of the property itself. The rights of the county and of an individual purchaser are limited to the statutory method of procedure which culminates in the execution and delivery by the county treasurer of a tax deed, and under the plain and unambiguous provisions of the statute, when such a deed is delivered, the title conveyed thereby is subject to "all claims which the state may have thereon for taxes or other liens or incumbrances."

Under those rules it is evident that no action can be maintained against the state for the purpose of having its lien for taxes decreed to be subordinate to some other lien, without a legislative enactment authorizing such suit against the state. There has been no such legislative enactment.

Since there is no procedure for the foreclosure of a lien of the state for taxes due to it, and since the courts have no authority to foreclose a lien of the state for taxes, the fact that the state has a lien for taxes due to it does not make the county treasurer or the board of county commissioners a necessary or proper party in an action to foreclose a mortgage given to secure a debt due to the Commissioners of the Land Office.

Since there is no procedure by which one who has a lien on land for taxes may institute an action to foreclose that lien, the converse must be held to be true. To hold otherwise is to hold that the holder of a tax lien, if he is a defendant in the action, may have his tax lien foreclosed, although, if he is a plaintiff in the action, he may not do so. We, therefore, hold that the holder of a tax lien cannot be made a party to an action and thereby be required to plead his tax lien and have the same established by judgment.

The Commissioners of the Land Office contend that they have no funds from which the taxes on the land may be paid. It is not necessary for the taxes to be paid by them. That question was determined by this court in State ex rel. Com'rs of Land Office v. Galyon, Co. Treas., 154 Okla. 204, 7 P. (2d) 484, wherein we held:

"Real estate which is acquired by the state in its sovereign capacity is thereupon absolved and freed of further liability for the taxes previously assessed against it, and a county treasurer is thereafter without legal authority to sell the same at a re-sale for taxes."

We so hold in this case.

In other words, when land is sold in foreclosure of a mortgage given to secure an amount due to the Commissioners of the Land Office, the purchaser takes the title thereto subject to the lien of the state for taxes due to the state, but, if the purchaser thereof is the state in the person of the Commissioners of the Land Office, it is absolved and freed of further liability for the taxes and the lien therefor.

In State ex rel. Com'rs of Land Office v. Galyon, Co. Treas., supra, this court referred to the decision of State v. Locke (N. M.) 219 P. 790, but did not quote therefrom. At this time we desire to quote from that decision as our reason for a rule herein stated. Therein, Bratton, J., speaking for that court, made three statements of principle, which we consider to be sound, in conformity with the law of Oklahoma, and controlling herein. Those statements are as follows:

"The object of taxing property is to produce the revenues with which to conduct the business of the state; it is entirely inconsistent with our theory of government for the property of the state to be taxed, or sold for taxes, in order to produce the money to be expended by the state. Such a procedure is but taking the money out of one pocket and putting it in the other.

Another consideration, which should not be overlooked, is that if public property, that is to say, property owned by the state, is to be burdened with a tax lien, the public might lose it entirely through oversight or carelessness of its agents in failing to pay the taxes when due, and allowing the same to be sold and the title pass to third parties.

"To consider it further burdened with such lien, and to permit it to be subsequently sold for the payment thereof, results in the state selling its own property to pay itself.

"To tax it would merely require and render it necessary to levy new taxes to meet the demand of those already laid; that the public would thus be taxing itself to produce the money with which to pay itself the taxes previously assessed, thereby benefiting no one except the officers employed to collect and disburse such revenues, whose compensation would merely serve to increase the burden of this useless and idle ceremony."·

Under that rule it might appear that the statements of this court in Board of Co. Com'rs of Woods.Co. v. State ex rel. Com'rs of Land Office, supra; State ex rel. Com'rs of Land Office v. National Bank of Commerce, supra; and Fullerton v. State ex rel. Com'rs of Land Office, supra, are dictum. However, that is not true. Those statements were not dictum, and the decision herein is not dictum, for the reason that the state is presenting the question and it may be considered under the provisions of section 403, O. S. 1931.

The judgment of the trial court is reversed. The cause is remanded to that court, with directions to vacate the judgment and to render a judgment in favor of the plaintiff for the amount due to it on its note and for the foreclosure of its mortgage, subject to such lien as the state of Oklahoma may have for taxes due on the land covered by the mortgage of the plaintiff, and to direct that upon a sale of the property the proceeds thereof should be applied, first, in payment of the costs of the action, including the cost of sale; second, in payment of the amount due to the plaintiff; and third, that the residue, if any, be brought into court, to be disposed of as the court may order and direct.

SWINDALL, McNEILL, OSBORN, and WELCH, JJ., and ERTEL, Special J., concur. RILEY, C. J., CULLISON, V. C. J., and BUSBY, J., dissent. BAYLESS, J., absent and disqualified.