

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

May 18, 1939

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:    Opinion No. O-476
            Re: Liability of cities, towns,
                villages, school districts,
                counties and charitable in-
                stitutions for gross pro-
                duction oil tax on their
                royalty interests.

This is in answer to your letter in which you
ask our opinion in regard to gross production taxes on
oil, provided for by Article 7057a, of the Revised Civil
Statutes of Texas, in the case of oil produced on land
owned by various municipal corporations, political sub-
divisons, and charitable or eleemosynary institutions.
You desire to know if the State can collect the gross
production oil tax on the royalty interest retained by
the owner, (which is usually a 1/8th royalty interest),
in each of the following cases, the owners being as fol-
lows, to-wit:

        1.   Cities, towns and villages
        2.   Independent school districts, and
             common school districts
        3.   Counties
        4.   Charitable or eleemosynary insti-
             tutions

You also ask the further question of whether or not there
would be any difference in the gross production taxes on
the royalty interest of the owners in the cases where the
royalty is payable in oil and where the royalty is pay-
able in money obtained from the landowner's (lessor's)
share of the oil.  In other words, is there any differ-
ence in the tax liability by virtue of the royalty being
payable in oil in one instance and being payable in money
obtained from the landowner's share of the oil in the oth-



er instance?

The parts of Article 7057a material to this discussion read as follows:

"Section 1. (1). For the purpose of this Act 'producer' shall mean any person owning, controlling, managing or leasing any oil well and/or any person who produces in any manner any oil by taking it from the earth or waters in this State, and shall include any person owning any royalty or other interest in any oil or its value whether produced by him, or by some other person on his behalf, either by lease, contract or otherwise.

"(9). 'Royalty owners' shall mean and include all persons owning any mineral rights under any producing leasehold within this State, other than the working interest, which working interest is that of the person having the management and operation of the well.

"Section 2. (1). There is hereby levied an occupation tax on oil produced within this State of two and three-quarters cents (2-3/4¢) per barrel of forty-two (42) standard gallons. Said tax shall be computed upon the total barrels of oil produced or salvaged from the earth or waters of this State without any deductions, and shall be based upon tank tables showing one hundred per cent (100%) of production and exact measurements of contents.

"(6). The tax herein levied shall be borne ratably by all interested parties, including royalty interests, and producers and/or purchasers of oil are hereby authorized and required to withhold from any payment due interested parties, the proportionate tax due."

As far as we have been able to determine, there are no Texas appellate court cases passing directly on the

liability of the landowners that you ask about. However, as stated in your letter, in the case of Group No. 1 Oil Corporation vs. Sheppard, 89 S.W. (2d) 1021 (writ of error refused), the question has been answered in regard to University lands leased for oil development by the owner, the University of Texas, a 1/8th royalty being retained. In that case it was held that a gross production oil tax was not due on the royalty interest of the University. In the Group No. 1 Oil Corporation case, the court said:

> "We construe the act to levy the tax against the various interest holders in the oil produced, including the producer and royalty owners other than the University, in proportion to their respective interests; . . ."

We think it is important to notice that this is not a property tax, but it is an occupation tax. After considerable study we have come to the conclusion that the fact that the land from which this oil is produced is exempt from taxation does not result in the production of the oil being exempt from the gross production tax. In the case of Trustees of Cook's Estate vs. Sheppard, 89 S. W. (2d) 1026 (writ of error refused by Texas Supreme Court, and affirmed by United States Supreme Court), the court, while discussing this tax, said:

> "The tax is not against the oil royalty. It is levied as a gross production tax on the business of producing oil."

In Group No. 1 Oil Corporation vs. Sheppard, supra, the court, speaking of this tax, said:

> "The tax is levied on the business or occupation of producing the oil . . . The tax . . . is a gross production or gross receipts tax, the amount of the tax being measured by the gross activity of the business, and is under the authorities an occupation tax."

We think there is a sound reason why this gross production oil tax is not due on the royalty interest of a city, town or village; and that is that it is an occupation tax, and the Constitution of Texas prohibits the

imposition of occupation taxes on municipal corporations
in Article VIII, Section 1, which reads, in part, as fol-
lows:

> "The legislature may impose a poll
> tax. It may also impose occupation taxes,
> both upon natural persons and upon corpo-
> rations, other than municipal, doing busi-
> ness in this State."

The words "municipal corporations" clearly include all
cities, towns and villages, 30 Tex. Jur. 12. We are of
the opinion that the royalty interest of a city, town or
village is not subject to the gross production oil tax.

Independent school districts and common school
districts are likewise municipal corporations within the
meaning of that part of the Constitution. In Love vs.
City of Dallas, 120 Tex. 351, 40 S.W. (2d) 20, the court
said:

> "School districts are local public
> corporations of the same general charac-
> ter as municipal corporations."

In Harlingen Independent School District vs. C. H. Page
and Brother, (Comm. App.) 48 S.W. (2d) 983, the court said:

> "Independent school districts such
> as the one here involved are authorized
> and provided for under the Constitution
> and laws of this state. Furthermore,
> such districts are municipalities with
> the powers conferred on them by law."

By virtue of these authorities, we think the same exemp-
tion from occupation taxes that applies to cities, towns
and villages will also apply to school districts. We are,
therefore, of the opinion that the royalty interest of an
independent school district or a common school district
is not subject to the gross production oil tax.

We will now take up this question in regard to
counties, which is more difficult to answer than the pre-
ceeding questions. In the Group No. 1 Oil Corporation
case, which held that a gross production oil tax was not
due on the royalty interest of the University of Texas,
the court did not give a reason for its holding, appar-

ently assuming that everyone knew that such was the law, and that everyone knew the reasons why; and the court said:

> "The act merely levied the tax against royalty and other interests ratably, and we do not regard the tax as having been levied against the state or University royalty interest, because the Legislature will be presumed to know that the tax could not be lawfully levied against the State or University."

We have examined the briefs filed in the appellate court in that case, and all of the briefs take the position that the University's royalty interest is not subject to this tax, without giving any reason or authority, except the brief for appellant which cites the opinion of Attorney General Allred to the Comptroller on September 26, 1933, in which opinion it was said:

> "Even though . . . the State should actually engage in the occupation of producing oil, we do not believe it could impose an occupation tax on itself. While it is true that in the absence of constitutional prohibition the State may tax itself, the presumption is always against an intention to do so, and the State is impliedly immune unless the intention to include the State is clearly manifested. 2 Cooley on Taxation, Section 621; 61 S.J. 366.

> "No such manifestation is to be found in our Constitution or statutes. Rather, it is to be implied from the provisions of Section 1 of Article 8 that the imposition of an occupation tax upon the state is prohibited."

The court had some reason in mind when it made its holding in the Group No. 1 Oil Corporation case. Whatever that reason was, we think it will apply with equal force in the case of a county; and we feel that on the authority of that case we must hold that a county's royalty interest is not subject to the gross production oil tax. It may be that the court felt that the State should not



tax itself.

> 2 Cooley on Taxation, 4th Ed., 1312
> Eagle Point Irrigation District vs. Cowden, 137
>     Ore. 121, 1 Pac. (2d) 605
> State vs. Board of County Commissioners, 166
>     Okla. 78, 25 Pac. (2d) 1074
> State vs. Locke, 29 N. Mex. 148, 219 Pac. 790,
>     30 A.L.R. 407
> State vs. Smith (Mo.) 90 S.W. (2d) 405

The same reasons that exempt cities from this tax might also apply to counties, and that is that they are, in one sense, municipal corporations.

> Heigel vs. Wichita County, 84 Tex. 392, 19
>     S.W. 562
> Johnson vs. Llano County, 15 Tex. Civ. App.
>     421, 39 S.W. 995
> Brite vs. Atascosa County, 247 S.W. 878.

In 30 Tex. Jur. 15, it is said:

> ". . . they (counties) are classi-
> fied as municipal corporations by the
> Constitution."

That statement in Texas Jurisprudence has reference to the fact that the heading of Article XI of the Texas Constitution is entitled "Municipal Corporations" and it deals with counties as well as cities, and in Section 3 of that Article it says:

> "No county, city, or other munici-
> pal corporation shall hereafter become
> a subscriber to the capital of any pri-
> vate corporation or association, or make
> any appropriation or donation to the same,
> or in anywise loan its credit; . . ."

Those words indicate that the framers of the Constitution intended to include counties when they used the words "municipal corporations".

We are of the opinion that the royalty interest of a county is not subject to the gross production oil tax.

The conclusions we have reached in this opinion up to this point are in agreement with the conclusion reached



in an opinion written by an Assistant under Attorney General McCraw to the Comptroller on April 28, 1937, holding that the City of Refugio was not liable for this tax on its royalty interest from its land that was used for a public purpose, and also in agreement with our Opinion No. O-442, dated March 28, 1939, holding that Falls County was not liable for this tax on its royalty interest from its public school land, but different reasons than the ones given here were relied on in those opinions.

We will now take up this question in regard to charitable and eleemosynary institutions. We assume that you have reference to privately owned institutions and not to state or county owned institutions. We consider the words "charitable" and "eleemosynary" to have the same meaning. In the case of Nixon vs. Brown, 46 Nev. 439, 214 Pac. 524, the court said:

> "'Eleemosynary' has been the subject of much judicial discussion and interpretation, and it is generally conceded that 'eleemosynary' is synonymous with 'charitable' as the latter term is used in its technical sense in law. 15 Cyc. 482; 20 Corpus Juris 399; Hamburgher v. Cornell University, 9 Misc. Rep. 564, 166 N.Y. Supp. 46-48; People v. Cogswell, 113 Cal. 129, 45 Pac. 270, 35 L.R.A. 269."

The constitutional and statutory provisions that deal with these institutions are Article VIII, Section 2, of the Constitution of Texas, and Article 7150 of the Revised Civil Statutes of Texas. Article VIII, Section 2, provides, in part, as follows:

> "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the legislature may, by general laws, exempt from taxation public property used for public purposes; actual places or (of) religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious so-



ciety; provided that such exemption
shall not extend to more property than
is reasonably necessary for a dwelling
place and in no event more than one
acre of land; places of burial not held
for private or corporate profit; all
buildings used exclusively and owned by
persons or associations of persons for
school purposes and the necessary furni-
ture of all schools and property used
exclusively and reasonably necessary in
conducting any association engaged in
promoting the religious, educational
and physical development of boys, girls,
young men or young women operating under
a State or National organization of like
character; also the endowment funds of
such institutions of learning and reli-
gion not used with a view to profit; and
when the same are invested in bonds or
mortgages, or in land or other property
which has been and shall hereafter be
bought in by such institutions under
foreclosure sales made to satisfy or
protect such bonds or mortgages, that
such exemption of such land and property
shall continue only for two years after
the purchase of the same at such sale by
such institutions and no longer, and in-
stitutions of purely public charity; and
all laws exempting property from taxation
other than the property above mentioned
shall be null and void."

Article 7150 provides, in part, as follows:

"The following property shall be ex-
empt from taxation, to-wit:

"7.  Public charities. - All build-
ings belonging to institutions of purely
public charity, together with the lands
belonging to and occupied by such insti-
tutions not leased or otherwise used with
a view to profit, unless such rents and
profits and all moneys and credits are
appropriated by such institutions solely
to sustain such institutions and for the

> benefit of the sick and disabled members
> and their families and the burial of the
> same, or for the maintenance of persons
> when unable to provide for themselves,
> whether such persons are members of such
> institutions or not. . ."

We are not called upon here to decide whether or not this constitutional provision would permit the Legislature to exempt a charitable institution from an occupation tax like the one in question. Regardless of the legislative authority, it is clear from a reading of Article 7150 that the Legislature has only exempted private charitable institutions from taxation on their property. As the gross production oil tax is an occupation tax, and not a tax on property, these institutions would not be exempt from it.

We are of the opinion that the royalty interest of a privately owned charitable or eleemosynary institution is subject to the gross production oil tax.

We will now take up your last question, and that is whether or not there is any difference in the royalty owner's tax liability for gross production taxes by virtue of the royalty being payable in oil in one instance and being payable in money obtained from the landowner's share of the oil in the other instance. We think this question is answered by the very recent case of Sheppard vs. Stanolind Oil & Gas Co., 125 S.W. (2d) 645 (writ of error refused), in which it was said, concerning this tax, as follows:

> "The statute manifestly lays the tax
> upon the owner of any character of direct
> or immediate interest in the oil actually
> produced, or in 'its value,' without re-
> gard to the title to the oil either be-
> fore or after severance; and without re-
> gard to any arbitrary classification or
> nomenclature. We say direct or immediate
> to distinguish such interest from that of
> a mere lienor, whose interest is only col-
> lateral as security for a personal obliga-
> tion of absolute liability.

> ". . . it is clear that the tax would
> fall upon the royalty owner to the extent
> of his interest, regardless of whether the
> royalty was payable in oil, out of oil, or



> in the value of oil. Cook Estate case, supre. And this is so because the royalty owner's interest in production is such as to make him an interested party and a 'producer' within the meaning of the statute. . . "

By virtue of the authority just quoted, we are of the opinion that there is no difference in the royalty owner's tax liability for gross production taxes by virtue of the royalty being payable in oil in one instance and being payable in money obtained from the land owner's share of the oil in the other instance.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Cecil C. Rotsch
Assistant

COR:FG

APPROVED:

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN