GOTHAM HOTELS, LTD., a Delaware Corporation, Appellant,

v.

Don WILSON, Oklahoma County Assessor; Joe B. Barnes, Oklahoma County Treasurer; and Ralph Adair, Frank T. Lynch and J. P. Richardson, County Commissioners, Oklahoma County, Oklahoma, Appellees.

No. 51944.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 25, 1979.

Released for Publication by Order of Court of Appeals Oct. 25, 1979.

Robert J. Unruh, Jr., Oklahoma City, for appellant.

Andrew M. Coats, Dist. Atty., James P. Laurence, Asst. Dist. Atty., Oklahoma City, for appellees.

BRIGHTMIRE, Justice.

The core question raised here is whether or not county ad valorem taxes assessed against the old Biltmore Hotel—a now demolished downtown Oklahoma City structure—for the years 1973, 1974, 1975, were judicially extinguished by a mortgage foreclosure judgment rendered on April 11, 1977.

I

Gotham Hotels, Ltd., formerly held a mortgage on subject property—owned by one Homer Forrester of Arizona—which secured a promissory note for $1,450,000. The mortgagor defaulted and on July 12, 1976 Gotham filed a foreclosure suit[1] against Forrester and others having potential claims against the property. Plaintiff alleged with regard to taxes that on March 18, 1974 it had paid both real estate and personal taxes due against the property which the mortgagor had failed to pay.

In his August 25, 1976 answer Forrester denied this and alleged the fact to be that on August 11, 1976 he received a tax statement stating that a total of $103,483.01 was due on subject property for the years 1973, 1974, and 1975.

Plaintiff then joined the Board of County Commissioners of Oklahoma County as defendants alleging the Board's claims against the property were inferior to plaintiff's but asked nevertheless that the court foreclose its mortgage and declare it to have a valid first lien "subject to (1) unpaid taxes due and owing the Board of County Commissioners, Oklahoma County, Oklahoma . . . ."

On December 6, 1976 the Board of County Commissioners filed an answer stating Oklahoma County had a lien on subject realty for unpaid real property taxes, penalties and interest in the amount of $29,-146.58. It further "assert[ed] a lien upon said property . . . for any and all general and special taxes . . . due and owing at the time of foreclosure . . ."

A "Decree of Foreclosure"—approved by all parties—was submitted to and signed by the court on April 13, 1977 adjudging Oklahoma County to be "entitled to judgment as against the premises . . . in the sum . . . of . . . $29,146.58 . . . for unpaid, past due and delinquent property taxes due and payable thereon . . . and that same is to be a lien on the premises . . . ."

1. The record in that case was incorporated by reference in Gotham's petition in this case.

Gotham bought the property at a sheriff's sale May 31, 1977 for $1,000,000. Shortly after the sale was judicially approved Gotham contracted to sell the realty to the Oklahoma City Urban Renewal Authority. Before Gotham could close the transaction, however, the County Commissioners informed it that the figure set out in the county's foreclosure suit answer was not the full amount of the unpaid taxes assessed against the property and that the total sum it owed was $157,580.43—an amount which included $14,573.28 for taxes which accrued after the foreclosure suit was filed. Gotham paid the amount demanded under protest—contesting all but the 1976 tax of $29,146.58 and the later assessment of $14,573.28—and filed this suit under 68 O.S.1971 § 2469 to recover what it considers to have been a $113,860.57 overpayment.

The thrust of plaintiff's complaint is that extraction of the $113,860.57 from it was illegal because it was, in effect, an impermissible collateral attack on the foreclosure judgment. Moreover, Gotham alleges by implication that it did not become "aware [of the new amount until given] arbitrary notice . . . [by] defendants . . . on the eve of the closing of the sale of said real property . . . ." Such conduct, concluded plaintiff, violated his constitutional "right to due process and equal protection of the law," and therefore estops defendants from collecting the rest of the unpaid taxes.

The trial court, on January 12, 1978, sustained a demurrer to plaintiff's first amended petition and the amendment to it after concluding that the court in the foreclosure action was without jurisdiction to render a judgment for the taxes due. Plaintiff was granted 20 days to amend its petition, but instead of amending it asked the court to extend the allotted time and to certify the order sustaining the demurrer for "immediate" interlocutory appeal. The court declined to do so and this appeal was filed from an implied election to stand on the last amended petition.

**II**

■ The gist of four propositions advanced by Gotham is a refinement of its allegation that the county somehow sneaked up on and misled it as to the size of the tax lien which existed against the property. Such misfeasance, it contends, was prejudicial and operated to estop the county officials from requiring taxpayer to pay more than the county had represented to be due in the answer it filed in the foreclosure suit. Being thus estopped, it says, the county's demand for more tax money later was "illegal"—an essential requirement of § 2469 for the bringing of this action—and this warranted the foreclosure judgment. The first and most obvious fallacy in this thesis is the preposterous bid for the court to suppose that Gotham relied on the allegation set out in the county's deceptive answer as to the amount of taxes due and as a consequence suffered "severely."

To begin with the amount of taxes assessed against the property was a matter concerning which Gotham is deemed, under the circumstances, to have had at least constructive knowledge. 25 O.S.1971 § 13. Furthermore, Gotham had more than constructive notice; it got actual notice when Forrester attached to his answer in the foreclosure suit a copy of a tax statement dated August 11, 1976 rendered by the County Treasurer showing taxes—totalling $103,483—on subject property delinquent for the years 1973, 1974 and 1975, and alleged that these taxes had in fact not been paid. Gotham was obliged to either accept this important information as true or else check on its accuracy. Having notice of the true tax facts, it knew after reading the county's form answer that the lawyer had used a wrong figure and had set out the tax assessed only for the year 1976. And since Gotham knew of the mistake, it was improper to tender a long and complex journal entry containing the erroneous figure to the trial judge without advising him of the truth about what he was being asked to find. So much for plaintiff's claim of being "severely prejudiced in its closing of the sale" by an "error" of the county officials.

### III

■ There is a more fundamental reason why Gotham's petition fails to state a cause of action and that is, as the trial court correctly held, the foreclosure judgment insofar as it purported to adjudicate the amount of taxes due against the property was a nullity.[2] No power is vested in the courts of this state to enforce tax liens. *City of Sapulpa v. Land*, 101 Okl. 22, 223 P. 640 (1924); *State v. Board of County Commissioners of Nowata County*, 166 Okl. 78, 25 P.2d 1074 (1933). "The right to levy and collect taxes is an attribute of sovereignty—it cannot be suspended or surrendered under our Constitution . . . ." *Board of Commissioners of Woods County v. State ex rel. Commissioners of Land Office*, 125 Okl. 287, 257 P. 778 (1927). Once the state's lien attaches by assessment of a property, it cannot be divested by a later judicial sale.[3] According to *Board of Commissioners of Woods County*, a judgment may foreclose a mortgage lien, order the land be sold, and direct disbursement of the sale proceeds, "but the tax lien cannot be swept aside and held for naught."

Sustention of the demurrer to plaintiff's petition is affirmed.

BACON, P. J., and NEPTUNE, J., concur.

---

**2.** Actually the form of the order is such that only a finding is made. The judgment clause which in brief recites that "it is the judgment of [the] court, that the findings of this court . . constitute the . . . judgment . . . of this court," requires an elliptical construction of the finding paragraphs in order to achieve a judgment. If this is done the order probably should read as follows:

"The court . . . [grants to defendant county] judgment as against the premises . . . in the sum . . . of . . . $29,146.58 as and for unpaid past due and delinquent property taxes due and payable thereon . . . and that same is to be a lien on the premises herein or the proceeds derived from the sale thereof . . . ."

**3.** The only means available to avoid or remove an ad valorem tax lien is by (1) payment of the tax (along with penalties if overdue); or (2) lapse of time under 68 O.S.1971 § 24233. *U. S. v. Home Federal Savings & Loan Association of Tulsa*, Okl., 418 P.2d 319 (1966).